Dominic E. Draye, SBN 033012
drayed@gtlaw.com
**GREENBERG TRAURIG, LLP**
2375 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Telephone: (602) 445-8000
Facsimile: (602) 445-8100

Jonathan W. Thomas (to apply *pro hac vice*)
One Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 801-9219
Email: jonathan.thomas@gtlaw.com

*Attorneys for Plaintiff Oats Overnight, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Oats Overnight, Inc., an Arizona corporation, | CASE NO. |
| Plaintiff, | **COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| Fresh From Texas, LLC D/B/A "Fresh Texas", a Texas limited liability corporation, | |
| Defendants. | |

Pursuant to FED. R. CIV. P. 8(a), Plaintiff Oats Overnight, Inc. ("Plaintiff"), by and through its undersigned counsel, as and for its Complaint against Defendant Fresh From Texas, LLC d/b/a "Fresh Texas" ("Defendant"), alleges as follows based on knowledge of its own actions and on information and belief as to all other matters:

## NATURE OF ACTION

1. This is a lawsuit for willful trademark infringement.

2.     For more than a decade, Plaintiff has been advertising, offering for sale, and selling high-quality, protein-enriched oatmeal and related breakfast products under its OATS OVERNIGHT trademarks and brand throughout the United States.  Due to Plaintiff's longstanding use and considerable effort and expense, as well as widespread consumer exposure to Plaintiff's products featuring its marks, Plaintiff has developed significant goodwill and consumer recognition in and to its OATS OVERNIGHT word mark and inset logo ("OATS OVERNIGHT Logo," together with the OATS OVERNIGHT word mark, the "OATS OVERNIGHT Marks"):

oats
over
night

3.     The images shown below in this Paragraph are representative examples of Plaintiff's use of its OATS OVERNIGHT Marks in the marketplace:

  

4.     Plaintiff does not purport to have the exclusive right to use the words "oats" and "overnight" for oatmeal.  But what Plaintiff does have the exclusive right to do is to use its distinctive, federally registered OATS OVERNIGHT Marks and enjoin third

2

parties from using marks that infringe Plaintiff's OATS OVERNIGHT Marks—and that is what Defendant is doing: infringing Plaintiff's OATS OVERNIGHT Marks.

5. Like Plaintiff, Defendant advertises and sells oatmeal. Defendant is freeriding off the reputation and goodwill of Plaintiff's OATS OVERNIGHT Marks and brand to generate turnkey demand for its products and pass them off as being Plaintiff's OATS OVERNIGHT-brand products.

6. As shown below, Defendant's infringing logo copies Plaintiff's OATS OVERNIGHT Marks by: (i) using a triple-stacked format; (ii) separating the word "overnight" into two distinct words, which is not a common spelling; (iii) using bold font for the words "over" and "night" while leaving the word "oats" in a lighter font; (iv) using the same typeface; (v) not capitalizing any letter; and (vi) placing the infringing logo within a silhouette of the product's flavor:



("Defendant's Infringing Logo")

7. The overall commercial impression created by Defendant's Infringing Logo is so similar to Plaintiff's OATS OVERNIGHT Marks that consumers are confusing the parties' products with one another.

8. To protect the public from additional confusion caused by Defendant's Infringing Logo, Plaintiff demanded in a July 27, 2026 letter to Defendant that it immediately stop using its Infringing Logo and provide Plaintiff with an accounting of Defendant's sales of products featuring its Infringing Logo. *See* **Ex. 1** ("July 27 Letter").

9. Defendant responded to Plaintiff's July 27 Letter on August 3, 2026; however, Defendant did not comply with Plaintiff's demands. Accordingly, Plaintiff has

no choice but to seek judicial intervention to stop the use of Defendant's Infringing Logo and compensate Plaintiff for the harm that Defendant's Infringing Logo has caused to the carefully curated reputation and goodwill of Plaintiff's OATS OVERNIGHT Marks and brand.

10. Based on the allegations above and below, Plaintiff brings this Complaint against Defendant for: (i) federal trademark infringement in violation of 15 U.S.C. § 1114(1); (ii) federal false association, false designation of origin, and unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A); (iii) trademark infringement in violation of Arizona's common law; and (iv) unfair competition in violation of Arizona's common law. To prevent irreparable harm to the carefully curated reputation and goodwill of Plaintiff's OATS OVERNIGHT Marks and brand, Plaintiff also seeks permanent injunctive relief against the use of the Defendant's Infringing Logo.

## PARTIES

11. Plaintiff Oats Overnight, Inc. is a Delaware corporation with a principal place of business at 4121 East Cotton Center Boulevard, Phoenix, Arizona 85040.

12. According to publicly available documents filed with the United States Patent and Trademark Office ("PTO"), Defendant Fresh From Texas, LLC is a Texas limited liability company that does business as "Fresh Texas" and has a principal place of business at 3602 Highpoint, San Antonio, Texas 78217.

## JURISDICTION AND VENUE

13. The claims for trademark infringement, false association, false designation of origin, and unfair competition, respectively, asserted in Counts I and II, *infra*, arise under the Trademark Act of 1946 (as amended), namely, 15 U.S.C. §§ 1051 *et seq*. Accordingly, this Court has original and subject-matter jurisdiction over Counts I and II pursuant to 28 U.S.C. §§ 1331, 1338(a), and 15 U.S.C. § 1121(a).

14. The claims for trademark infringement and unfair competition asserted in Counts III and IV, *infra*, arise under Arizona's common law, and are so related to the

4

federal claims asserted in Counts I and II, *infra*, that they form part of the same case or controversy. Accordingly, this Court has supplemental jurisdiction over Counts III and IV pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

15. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c).

16. This Court has personal jurisdiction over Defendant because, on information and belief, it transacts business using its Infringing Logo in this District. For example, Defendant's products featuring its Infringing Logo are advertised for sale on nationally accessible websites, such as heb.com, Instacart.com, and shipt.com. Plaintiff's claims in this lawsuit arise out of and relate to the use of Defendant's Infringing Logo in connection with advertising and selling Defendant's products, including on these nationally accessible websites. Accordingly, on information and belief, Defendant is subject to personal jurisdiction in this District.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

**I.     Plaintiff**

      **A.     Plaintiff's OATS OVERNIGHT Brand**

17. In or about 2016, Plaintiff's founder, Brian Tate, recognized there was a gap in the market for high-quality, do-it-yourself oatmeal.

18. After extensive research and development, Mr. Tate and his team developed Plaintiff's distinctive, three-step process for making high-quality, do-it-yourself oatmeal: (i) mix the oats with any type of milk; (ii) refrigerate the oats-and-milk mixture overnight; and (iii) the next morning, shake the oats-and-milk mixture before consuming it.

19. A decade later, Plaintiff's OATS OVERNIGHT brand has grown from three flavors that Mr. Tate helped make by hand to a global brand with nearly 3 million customers, over 500 employees, two manufacturing facilities in the United States, and nearly 40 flavors that its customers can purchase in 16, 24, or 32-meal allotments via a one-time purchase or as part of a monthly subscription.

**B.**    **Plaintiff's OATS OVERNIGHT Marks**

20.    To identify and distinguish Plaintiff's products in the marketplace, Plaintiff uses its OATS OVERNIGHT Marks, which, as alleged *supra*, include the (i) OATS OVERNIGHT word mark and (ii) inset OATS OVERNIGHT Logo.

**oats
over
night**

21.    The images shown below in this Paragraph are representative examples of Plaintiff's use of its OATS OVERNIGHT Marks in the marketplace:

  

22.    To strengthen Plaintiff's common-law trademark rights in and to its OATS OVERNIGHT Marks, it registered its OATS OVERNIGHT Marks with the PTO, as shown in the chart below.

| Mark | Reg. No. | Registration Date | First-Use Date | Class/Goods and Services |
|---|---|---|---|---|
| OATS OVERNIGHT | 6,770,462 ("'462 Reg.") | June 28, 2022 | Aug. 10, 2016 | 30: Oatmeal |
| oats over night | 6,104,721 ("'721 Reg.") | July 21, 2020 | June 30, 2016 | 30: Oatmeal |
| oats over night | 6,104,720 ("'720 Reg.") | July 21, 2020 | August 10, 2016 | 35: Online retail store services featuring oatmeal and mixing cups |

23.    True and correct copies of the Registration Certificates for the '462, '721, and '720, registrations, respectively (collectively, "Registrations"), are attached hereto as **Exhibits 2-4**.

24.    The Registrations are on the Principal Trademark Register.

25.    Each of the Registrations is incontestable within the meaning of 15 U.S.C. § 1065.   Under 15 U.S.C. § 1115(b), the incontestable status of the Registrations is conclusive evidence of: (i) the validity of Plaintiff's OATS OVERNIGHT Marks covered by the Registrations; (ii) the validity of the registration of Plaintiff's OATS OVERNIGHT Marks covered by the Registrations; (iii) Plaintiff's ownership of the OATS OVERNIGHT Marks covered by the Registrations; and (iv) Plaintiff's exclusive right to use its OATS OVERNIGHT Marks covered by the Registrations for the goods and services specified in those Registrations.

**C.    Consumers Receive Widespread Exposure to Plaintiff's Products Offered Under Plaintiff's OATS OVERNIGHT Marks**

26.    Since 2016, consumers throughout the world (including the United States) have received widespread exposure to Plaintiff's products offered under its OATS OVERNIGHT Marks.

27.    For example, consumers visiting Plaintiff's website see numerous, prominent displays of Plaintiff's OATS OVERNIGHT Marks, including at the top of Plaintiff's website's homepage:



28.    Plaintiff's nearly 3 million customers have received widespread exposure to Plaintiff's OATS OVERNIGHT Marks via Plaintiff's packaging, which prominently displays Plaintiff's OATS OVERNIGHT Marks:



29.    As another example, consumers encounter Plaintiff's OATS OVERNIGHT Marks on Plaintiff's social-media accounts, which, as shown in the images below, prominently display Plaintiff's OATS OVERNIGHT Marks and, combined, have over one million followers:

    a.    TikTok:



b.      Instagram:



c.      Facebook:



*See* **Exhibits 5-7**.

30.     As a further example, consumers receive widespread exposure to Plaintiff's products offered under its OATS OVERNIGHT Marks at retailers throughout the United States, including, for example: Walmart; Target; Wegmans; Costco; and Kroger.

31.     Plaintiff's products offered under its OATS OVERNIGHT Marks also receive unsolicited media coverage.  Examples of this unsolicited media coverage are attached hereto as **Exhibits 8-12**.

32.     The widespread consumer exposure to Plaintiff's products offered under its OATS OVERNIGHT Marks has resulted in commercial success.  Indeed, since 2016, Plaintiff has sold tens of millions of dollars' worth of products under its OATS OVERNIGHT Marks.  Since 2016, Plaintiff also has invested millions of dollars into advertising its products offered under its OATS OVERNIGHT Marks.

33.    Based on Plaintiff's decade of continuous use of its OATS OVERNIGHT Marks, as well as the widespread, consumer exposure and commercial success of Plaintiff's products offered under its OATS OVERNIGHT Marks and Plaintiff's advertising expenditures, the OATS OVERNIGHT Marks have become strong identifiers of and for Plaintiff's products in the marketplace and enjoy extensive consumer recognition and goodwill.

34.    To protect the distinctiveness, reputation, and goodwill of Plaintiff's OATS OVERNIGHT Marks and brand, Plaintiff polices the marketplace for unauthorized and infringing uses of its Marks.   Defendant is an example of Plaintiff's enforcement efforts.

## II.    Defendant and its Infringing Logo

35.    Upon information and belief, Defendant is a manufacturer and supplier of prepared foods, including oatmeal.

36.    As shown in the images below, the consumer-facing portion of Defendant's products displays Defendant's Infringing Logo and no other indicia of source or quality:

  

 

37.    As shown in the images in Paragraph 36 of this Complaint, the overall commercial impression that Defendant's Infringing Logo creates is confusingly similar to

Plaintiff's OATS OVERNIGHT Marks.  Indeed, and as also shown in the representative examples below, just like Plaintiff's OATS OVERNIGHT Logo, Defendant's Infringing Logo: (i) copies the triple-stacked format of Plaintiff's OATS OVERNIGHT Logo; (ii) separates the word "overnight" into two distinct words, which is not a common spelling; (iii) bolds the words "over" and "night" while leaving the word "oats" in a lighter font; (iv) uses the same typeface; (v) does not capitalize any letter; and (vi) places the Infringing Logo within a silhouette of the product's flavor:

| Plaintiff's OATS OVERNIGHT Marks | Defendant's Infringing Logo |
| --- | --- |
| | |

38.    Defendant uses its Infringing Logo to advertise and sell the same type of product that Plaintiff advertises and sells under its OATS OVERNIGHT Marks, namely, oatmeal.

39.    On information and belief, the parties' oatmeal products appeal to the same category of customers, namely, individuals looking for a healthy breakfast or snack that requires minimal preparation time.

40.    On information and belief, the parties' customers encounter the parties' products in the same categories of advertising and trade channels, namely, the Internet, social media, and third-party retailers.   Relatedly, the first three results of a search on retailer HEB's website for Plaintiff's OATS OVERNIGHT-brand product are for products featuring *Defendant's* Infringing Logo:



*See* **Ex. 13**.

41.    Given the myriad similarities between the parties' marks, products, customers, and advertising and trade channels, the use of Defendant's Infringing Logo has unsurprisingly caused actual confusion.  Examples of the actual confusion caused by the use of Defendant's Infringing Logo include:

a.

b.



c.



d.



e.



f.



g.



## III.    Plaintiff Attempted to Resolve This Dispute Prior to Litigation

42.    Defendant rebuffed Plaintiff's attempt to resolve this dispute prior to litigation.

### A.    Plaintiff's July 27 Letter to Defendant

43.    In Plaintiff's July 27 Letter to Defendant, Plaintiff identified its trademark rights to Defendant and explained why Defendant's Infringing Logo violates Plaintiff's trademark rights.  Indeed, Plaintiff noted in the July 27 Letter that, *inter alia*:

14

> The identical wording and stylistic overlap [of Defendant's Infringing Logo] cannot be a mere coincidence. And because of the visual similarities between [Plaintiff's OATS OVERNIGHT] Logo and [Defendant's Infringing] Logo and the identity of the parties' respective products, consumers are likely to falsely believe that [Defendant's] oatmeal product is manufactured by [Plaintiff], when that is clearly not the case.

44. Plaintiff concluded the July 27 Letter to Defendant with the following demands:

1. Cease all use of [Defendant's Infringing] Logo and any other mark or trade dress confusingly similar to [Plaintiff's OATS OVERNIGHT] Logo or any of [Plaintiff's] other trademarks;

2. Remove [Defendant's Infringing] Logo from all product packaging, labels, advertisements, websites, social media accounts, and other marketing materials;

3. Cease all manufacture, distribution, offering for sale, and sale of products bearing [Defendant's Infringing] Logo;

4. Provide written confirmation that [Defendant] has complied with the foregoing demands; and

5. Provide a full accounting of all products sold under [Defendant's Infringing] Logo, including the dates such products were sold, units sold, gross revenues, profits, and all channels through which such products were marketed and sold, in addition to the number of remaining products left in inventory that bear [Defendant's Infringing] Logo.

**B.     Defendant's August 3 Response to Plaintiff's July 27 Letter**

45. Defendant responded to Plaintiff's July 27 Letter on August 3, 2026. Notwithstanding the myriad similarities between the parties' marks, products, customers, and advertising and trade channels, Defendant failed to comply with Plaintiff's demands in Plaintiff's July 27 Letter.

46. As alleged *supra*, the use of Defendant's Infringing Logo has caused actual consumer confusion, which is likely to continue for the reasons alleged herein unless this Court permanently enjoins the use of Defendant's Infringing Logo. Accordingly, to

15

prevent additional confusion from occurring and remedy the harm that Defendant's Infringing Logo is causing to Plaintiff's carefully curated OATS OVERNIGHT Marks and brand, Plaintiff asserts the Claims and Prayer for Relief below against Defendant.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

*(Trademark Infringement Under 15 U.S.C. § 1114(1))*
*(Infringement of Plaintiff's Federally Registered OATS OVERNIGHT Marks)*

47.     Plaintiff repeats and incorporates by reference the statements and allegations in Paragraphs 1-46 of the Complaint as though set forth fully herein.

48.     The First Claim for Relief is a claim for federal trademark infringement under 15 U.S.C. § 1114(1).

49.     Plaintiff is the exclusive owner of the federally registered OATS OVERNIGHT Marks.

50.     Plaintiff's federally registered OATS OVERNIGHT Marks are valid.

51.     Plaintiff has the exclusive right to use the federally registered OATS OVERNIGHT Marks in United States commerce for the goods and services specified in the Registrations, which include oatmeal.

52.     Plaintiff's exclusive rights in and to the federally registered OATS OVERNIGHT Marks predate any rights that Defendant could establish in and to any mark that consists of "oats" and "overnight" (including spelled as "over night") in whole or in part, including, without limitation, Defendant's Infringing Logo.

53.     Plaintiff's federally registered OATS OVERNIGHT Marks are distinctive of and for the goods and services specified in the Registrations.

54.     The incontestable status of Plaintiff's OATS OVERNIGHT Marks means that, *inter alia*, Defendant is blocked from asserting that the OATS OVERNIGHT Marks lack distinctiveness as a matter of law.

16

55. Independent of the incontestable status of the OATS OVERNIGHT Marks, Plaintiff's OATS OVERNIGHT Marks are strong identifiers of and for the goods and services that Plaintiff advertises, offers for sale, and sells under its OATS OVERNIGHT Marks.

56. Defendant uses its Infringing Logo in United States commerce.

57. Defendant's use of its Infringing Logo creates the same and/or a confusingly similar overall commercial impression in the marketplace as the use of Plaintiff's federally registered OATS OVERNIGHT Marks.

58. Defendant is using its Infringing Logo to advertise, promote, offer for sale, and sell goods that are identical to, compete with, and/or overlap with the goods and services that Plaintiff advertises, promotes, offers for sale, and sells under Plaintiff's federally registered OATS OVERNIGHT Marks.

59. On information and belief, the myriad similarities between Defendant's Infringing Logo and Plaintiff's OATS OVERNIGHT Marks are not a coincidence, but rather are the result of Defendant's intentional copying of Plaintiff's OATS OVERNIGHT Marks and intent to trade off the reputation and goodwill of Plaintiff's OATS OVERNIGHT Marks to sow confusion in the marketplace about the parties' products.

60. Defendant's use of its Infringing Logo on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of goods, as alleged, herein, has caused actual confusion about whether Plaintiff is Defendant (or vice versa), whether Plaintiff approves of, endorses, and/or sponsors Defendant's products (or vice versa), and/or whether there is some type of affiliation, association, and/or connection between Plaintiff and Defendant. On information and belief, the fact that actual confusion has occurred demonstrates that, no matter how sophisticated the parties' customers may be, Defendant's Infringing Logo is confusingly similar to, and infringes, Plaintiff's OATS OVERNIGHT Marks.

61.    Defendant's use of its Infringing Logo on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of goods, as alleged, herein, is likely to continue causing consumer confusion, mistake, and/or deception about whether Plaintiff is Defendant (or vice versa), whether Plaintiff approves of, endorses, and/or sponsors Defendant's products (or vice versa), and/or whether there is some type of affiliation, association, and/or connection between Plaintiff and Defendant.

62.    Based on (i) Plaintiff's longstanding and continuous use of its OATS OVERNIGHT Marks in United States commerce, (ii) the federal registration of the OATS OVERNIGHT Marks, and (iii) Plaintiff's July 27 Letter to Defendant, Defendant had actual and/or constructive knowledge of Plaintiff's superior rights in and to the OATS OVERNIGHT Marks when Defendant began using, and decided to continue using, its Infringing Logo.

63.    Upon information and belief, Defendant adopted and uses its Infringing Logo in furtherance of Defendant's willful, deliberate, and bad-faith scheme of exploiting the extensive consumer goodwill, reputation, and commercial success of products that Plaintiff offers under its federally registered OATS OVERNIGHT Marks.

64.    Upon information and belief, Defendant has made, and will continue to make, substantial profits and gain from the use of its Infringing Logo, to which Defendant is not entitled at law or in equity.

65.    Upon information and belief, Defendant's acts and conduct complained of herein constitute trademark infringement in violation of 15 U.S.C. § 1114(1).

66.    Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

67.    Plaintiff has no adequate remedy at law.

18

**SECOND CLAIM FOR RELIEF**

*(False Association, False Designation of Origin, and Unfair Competition Under 15 U.S.C. § 1125(a)(1)(A))*
*(Use of the Infringing Logo)*

68. Plaintiff repeats and incorporates by reference the statements and allegations in Paragraphs 1-67 of the Complaint as though set forth fully herein.

69. The Second Claim for relief is a claim for false association, false designation of origin, and unfair competition under 15 U.S.C. § 1125(a)(1)(A).

70. Upon information and belief, Defendant's acts and conduct complained of herein constitute false association, false designation of origin, and unfair competition under 15 U.S.C. § 1125(a)(1)(A).

71. Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

72. Plaintiff has no adequate remedy at law.

**THIRD CLAIM FOR RELIEF**

*(Trademark Infringement Under Arizona Common Law)*
*(Infringement of Plaintiff's OATS OVERNIGHT Marks)*

73. Plaintiff repeats and incorporates by reference the statements and allegations in Paragraphs 1-72 of the Complaint as though set forth fully herein.

74. The Third Claim for Relief is a claim for trademark infringement under Arizona's common law.

75. Upon information and belief, Defendant's acts and conduct complained of herein constitute trademark infringement in violation of Arizona's common law.

76. Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

77. Plaintiff has no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF
*(Unfair Competition Under Arizona Common Law)*
*(Use of the Infringing Logo)*

78.    Plaintiff repeats and incorporates by reference the statements and allegations in Paragraphs 1-77 of the Complaint as though set forth fully herein.

79.    The Fourth Claim for Relief is a claim for unfair competition under Arizona's common law.

80.    Upon information and belief, Defendant's acts and conduct complained of herein constitute unfair competition in violation of Arizona's common law.

81.    Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

82.    Plaintiff has no adequate remedy at law.

**WHEREFORE**, based on the foregoing, Plaintiff hereby prays that this Court:

A.    Enter an Order, finding in Plaintiff's favor on each Claim for Relief in the Complaint;

B.    Pursuant to 15 U.S.C. § 1116:

1.    Permanently enjoin Defendant, its agents, servants, employees, officers, and all persons and entities in active concert and participation with it, from using the Infringing Logo (or any other mark(s) confusingly similar to Plaintiff's OATS OVERNIGHT Marks) for, on, and/or in connection with the distribution, advertising, promoting, offering for sale, and/or sale of any goods or services, including, without limitation, oatmeal;

2.    Order Defendant to file with the Court and serve upon Plaintiff's counsel, within 30 days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

C.    Pursuant to 15 U.S.C. § 1117:

1.    Order Defendant to provide Plaintiff with an accounting of all of Defendant's distribution and sale of goods and services under Defendant's Infringing

20

Logo, as well as Defendant's profits derived therefrom, such amounts to be determined at trial;

2.    Order Defendant to pay to Plaintiff all of Defendant's profits derived from the distribution and sale of all goods and services offered under Defendant's Infringing Logo, such amounts to be determined at trial;

3.    Award Plaintiff actual damages and treble damages caused by Defendant's infringement of Plaintiff's OATS OVERNIGHT Marks and other unlawful conduct alleged herein (including, without limitation, Defendant's use of Defendant's Infringing Logo), such amounts to be determined at trial;

4.    Declare that Plaintiff is the "prevailing party" in this action for purposes of 15 U.S.C. § 1117(a);

5.    Declare that this is an "exceptional" case within the meaning of 15 U.S.C. § 1117(a); and

6.    Award Plaintiff its costs and reasonable attorneys' fees incurred in this matter;

D.    Pursuant to 15 U.S.C. § 1118, order the destruction of all unauthorized goods and services within the possession, custody, and control of Defendant that bear, feature, and/or contain Defendant's Infringing Logo (or any other mark(s) confusingly similar to Plaintiff's OATS OVERNIGHT Marks);

E.    Award Plaintiff pre-judgment and post-judgment interest against Defendant; and

F.    Award to Plaintiff any further relief that this Court deems just and equitable.

## JURY DEMAND

Plaintiff requests a trial by jury for all issues so triable in this action pursuant to FED R. CIV. P. 38(b) and 38(c).

21

Dated: August 11, 2026

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By:    /s/ Dominic E. Draye
       Dominic E. Draye
       drayed@gtlaw.com
       Jonathan W. Thomas (*pro hac vice*)
       jonathan.thomas@gtlaw.com

       *Attorneys for Plaintiff*